IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| ENVISAGE DEVELOPMENT PARTNERS, LLC, ET AL., | Case No. 17-cv-03971-CRB |
|---|---|
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO WITHDRAW REFERENCE AND GRANTING MOTION TO COMPEL ARBITRATION** |
| PATCH OF LAND LENDING, LLC, et al., | |
| Defendants. | |

This case involves a construction loan intended to produce a luxury property, which instead resulted in a bankruptcy and two adversary proceedings between lender and borrower. Two motions are now pending: a motion to withdraw the reference to the district court, see Mot. to Withdraw (dkt. 1), and a motion to compel arbitration, see Mot. to Compel (dkt. 5). Both motions turn in large part on whether the adversary proceeding at issue is a core or non-core proceeding. Because the Court concludes that it is non-core, it will grant both motions.

**I.   BACKGROUND**

In August of 2015, Plaintiff Envisage Development Partners, LLC ("Envisage") entered into a construction loan with Defendant Patch of Land ("POL"). Ray Decl. (dkt. 5-1) ¶ 4. The purpose of the loan was to provide funds for the purchase and renovation of a piece of property in Noe Valley: Envisage hoped to transform the property from a multi-family dwelling into a "luxury single family residence." Id. Three loan documents govern the parties' relationship.

The first is the Promissory Note. The Note provides that Envisage would borrow,

and agree to pay to POL, the principal sum of $2,790,000.00, together with interest thereon at the initial interest rate of 11.0% per year. See id. ¶ 5 & Ex. A. The interest rate would be adjusted as provided therein. Id. The Note was payable in monthly installments of accrued unpaid interest, with a final payment of the remaining balance of both unpaid principal and interest due in August of 2016. Id. Upon default, POL could declare all monies payable to be "immediately due and payable," and increase the interest rate to the lesser of 18% or the maximum allowed by law. Id. The Note also includes an arbitration clause, which provides that "[a]ny dispute involving enforcement or interpretation of this Note shall be decided by binding arbitration under the rules of the American Arbitration Association ("AAA")." See id. ¶ 6, Ex. A ¶ 29.

Second, as security for the loan, Envisage, as trustor, executed a Deed of Trust. Id. ¶ 7; Ex. B. The Deed of Trust includes an arbitration clause, which provides in part: ". . . any and all disputes, controversies or claims arising out of or relating to this Deed of Trust and other loan documents or transactions contemplated thereby, including, without limitation, the making, performance, or interpretation of this Deed of Trust of other loan documents, shall be resolved by binding arbitration." Id. ¶ 10, Ex. B ¶ 52.2.[1]

The third loan document is the Guaranty. Plaintiff Mark Rowson executed a Guaranty in which he agreed to pay to POL any of Envisage's debt, plus interest and costs of collection thereof, including reasonable attorneys' fees. Ray Decl. ¶¶ 12–13, Ex. C. The Guaranty, too, includes an arbitration clause, stating: "Any dispute involving the enforcement or interpretation of this Agreement shall be decided by binding arbitration under the rules of the American Arbitration Association ("AAA"). . . ." Id. Ex. C ¶ 25.

---

[1] Preceding the arbitration clause in the Deed of Trust is a "waiver of right to jury trial" clause in which, "to the extent permitted by applicable law," both parties "agree to waive their respective rights to a jury trial of any claim or cause of action based on or arising from this Deed of Trust." See Ray Decl. Ex. B ¶ 52.1. The arbitration clause begins, "To the extent a predispute waiver of the right to trial by jury is not enforceable under applicable law . . ." See id. ¶ 52.2. The Ninth Circuit, applying California law, recently found that a contractual jury trial waiver was unenforceable, see In re County of Orange, 784 F.3d 520, 524 (9th Cir. 2015), and so the parties here rightly skip over the "jury trial waiver" clause in the Deed of Trust to get to the arbitration clause.

2

The parties provide little detail in the pending motions about what went wrong in their business relationship, aside from saying that POL demanded payment under the Guaranty, "but no part of said balance has been paid." See Ray Decl. ¶ 14.[2]

In February of 2017, POL initiated litigation against Mark Rowson, Michelle Rowson, Envisage, and 25 Alta EVP LLC in California Superior Court, Los Angeles County. See generally Order Granting Motion to Remand (dkt. 17) at 2 in Patch of Land Lending, LLC v. Rowson et al., Case No. 17-3030-HLB (Bankr. N.D. Cal. 2017) (referencing Patch of Land Lending, LLC v. 25 Alta EVP, LLC, et al., Case No. SC127062 (Cal. Sup. Ct.)). Shortly thereafter, Envisage filed a voluntary petition for relief under Chapter 11, which was assigned to U.S. Bankruptcy Judge Hannah L. Blumenstiel of the Northern District of California. See id. (referencing In re Envisage Development Partners, LLC, Case No. 17-30396-HLB). Envisage then filed a notice of removal, which removed the Los Angeles County case to the bankruptcy court and commenced a related adversary proceeding (Case No. 17-3030-HLB). Id. POL subsequently dismissed Envisage as a defendant in that adversary proceeding, and filed a motion to remand the case to state court. Id. Judge Blumenstiel granted that motion, see generally id., and Rowson has appealed that order to this Court in a related case, see Bankruptcy Appeal (dkt. 1) in Envisage Development Partners, LLC v. Patch of Land Lending, LLC, Case No. 17-3969-CRB. That bankruptcy appeal is not at issue in the pending motions.

At issue in the pending motions is a second adversary proceeding, which Envisage and the Rowsons filed in June of 2017 in the Envisage bankruptcy case (Case No. 17-30396-HLB) against POL and its asset manager, Michael Ray. See generally Ray Decl. Ex. D (Compl. (dkt.1) in Envisage Development Partners, LLC v. Patch of Land, LLC, Case No. 17-3040 (Bankr. N.D. Cal. 2017)). The adversary proceeding complaint asserts: (1) violation of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18

---

[2] The adversary proceeding complaints do detail the dispute. See, e.g., Ray Decl. Ex. D (Complaint in Envisage Development Partners, LLC v. Patch of Land, LLC, Case No. 17-3040 (Bankr. N.D. Cal. 2017)).

3

U.S.C. §§ 1961–1968; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) tortious breach of fiduciary duty; (5) fraud; (6) duress; (7) interference with advantageous contractual/business relations; (8) intentional infliction of emotional distress; (9) conversion; (10) restitution/unjust enrichment; (11) accounting; (12) constructive trust; (13) specific performance; and (14) declaratory relief. Id. POL has now moved to withdraw the reference of the adversary proceeding to the district court, and moved to compel arbitration of the claims therein. See generally Mot. to Withdraw; Mot. to Compel.

## II. DISCUSSION

This Order addresses both pending motions.

### A. Motion to Withdraw the Reference

POL asks the Court to withdraw the reference on two grounds. First, it argues that the Court must withdraw the reference under 28 U.S.C. § 157 because (1) Envisage's adverse action requires adjudication of federal claims, and (2) the bankruptcy court lacks jurisdiction to hold a jury trial without the consent of both parties. Second, POL argues that the Court should exercise its discretion to withdraw the reference under § 157 because Envisage brings only non-core claims—meaning that the district court would be required to conduct de novo review of the bankruptcy court's factual and legal findings. The Court disagrees that withdrawal of the reference is mandatory here, but agrees that discretionary (or "permissive") withdrawal is warranted.

#### 1. Mandatory Withdrawal

Section 157(d) provides the standard for mandatory withdrawal:

> The district court shall, on timely motion of a party . . . withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Withdrawal is only mandatory where the case involves "substantial and material questions of federal law." Sec. Farms v. Int'l Bhd. of Teamsters, 124 F.3d

4

999, 1008 (9th Cir. 1997). The Ninth Circuit has not interpreted the "substantial and material question" standard in any reported case. However, the Seventh Circuit considered the standard for mandatory withdrawal in depth in a case that this Court previously cited favorably. In re Vicars Ins. Agency, Inc., 96 F.3d 949 (7th Cir. 1996) (cited in Greenspan v. Paul Hastings Janofsky & Walker LLP, No. C 12-01148 CRB, 2012 WL 3283516, at *4 (N.D. Cal. Aug. 10, 2012)). The Vicars court rejected a literal reading of the mandatory withdrawal provision, noting that reading the statute to require withdrawal of every proceeding that involves interpretation of federal law outside title 11 would "eviscerate much of the work of the bankruptcy court." 96 F.3d at 952. Instead, it held that § 157(d) calls for withdrawal only when the federal issues "require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law." Id. at 954. This is a reasonable interpretation of the statutory language, and the Court will follow it here.

POL argues that withdrawal is mandatory here because Envisage's state-law claims implicate the Federal Arbitration Act ("FAA"). Mot. to Withdraw at 4. However, POL does not assert that the FAA-related issues "involve more than mere application of existing law to new facts." See Vicars, 96 F.3d at 954. Accordingly, withdrawal of the reference in the adversary proceeding is not mandatory.

POL next argues that the bankruptcy court lacks jurisdiction over the claims in the adverse proceeding because the Seventh Amendment entitles POL to a jury trial on Envisage's state-law contract claims, citing Daewoo Motor Am., Inc. v. Gulf Ins. Co., 302 B.R. 308, 315 (Bankr. C.D. Cal. 2003). However, the Ninth Circuit has squarely rejected this argument. In re Healthcentral.com, 504 F.3d 775, 786–88 (9th Cir. 2007). In In re Healthcentral.com, the court held that "a Seventh Amendment jury trial right does not mean the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court." Id. at 787. Instead, the court held that "the bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters." Id. (emphasis added). Accordingly, the Seventh Amendment does not require withdrawal here.

5

## 2. Permissive Withdrawal

Section 157(d) also provides the basis for permissive withdrawal. That provision allows the district court to "withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). In determining whether cause exists, district courts consider (1) "the efficient use of judicial resources," (2) "delay and costs to the parties," (3) "uniformity of bankruptcy administration," (4) "the prevention of forum shopping," and (5) "other related factors." Sec. Farms, 124 F.3d at 1008.

Determining whether it would be more efficient to withdraw the reference requires an analysis of the constitutional backdrop to Congress's creation of the bankruptcy courts. Bankruptcy courts lack jurisdiction "to make final determinations in matters that could have been brought in a district court or a state court." In re Castlerock Props., 781 F.2d 159, 162 (9th Cir. 1986); see also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982) ("Marathon"). Such matters are "non-core" proceedings over which bankruptcy courts lack jurisdiction, as a matter of statutory as well as constitutional interpretation. See 28 U.S.C. § 157(b)(2) (enumerating "core" proceedings over which bankruptcy judges have jurisdiction). However, initial proceedings in "non-core" matters may be held before a non-Article III court, subject to de novo review by the district court of both factual and legal findings. Castlerock, 781 F.2d at 162.

In its adversary complaint, Envisage brings one claim under RICO, 18 U.S.C. §§ 1961–68, and several contract and tort claims arising out of POL's alleged contract breach. Envisage's state-law claims are non-core matters over which the bankruptcy court lacks the authority to enter final judgment. See Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 584 (1985) (bankruptcy courts lack power to enter final judgment in state-law contract claims); Stern v. Marshall, 564 U.S. 462, 469 (2011) (same with respect to tort claims); see also Castlerock, 781 F.2d at 162 (bankruptcy code would be unconstitutional if it allowed bankruptcy courts to enter final judgment in state-law contract claims). Envisage's arguments to the contrary are unavailing. Meanwhile, Envisage does not argue

6

that its RICO claim is a core proceeding. Accordingly, Envisage's adversary complaint consists entirely of non-core claims.

Envisage argues that it would be more efficient to litigate the adversary proceeding in bankruptcy court. However, it is difficult to see how this could be so, given that none of the claims in that proceeding involves a core bankruptcy matter. Any decision made by the bankruptcy court would be subject to de novo review by this Court as to both factual findings and legal conclusions. While Envisage argues that the adversary proceeding is inextricably entwined with the title 11 proceeding, this is not so: the issue of rights and liabilities under the loan agreement is conceptually distinct from the issue of how Envisage's liabilities should be discharged in bankruptcy. Envisage argues that the bankruptcy court has already spent considerable time grappling with the issues raised in the adversary proceeding, but this is not so, either. The bankruptcy court has not evaluated the merits of either the claims in the adversary proceeding, or the contract-related claims brought by POL that have since been remanded to state court. Accordingly, judicial efficiency would be best served by withdrawing the reference. None of the other factors for permissive withdrawal weigh in favor of leaving the proceeding in bankruptcy court. The Court thus exercises its discretion to withdraw the reference.

### B.  Motion to Compel Arbitration

The second pending motion is POL's Motion to Compel Arbitration. See generally Mot. to Compel.

#### 1.  Legal Standard

Contracts "evidencing a transaction involving commerce" are subject to the Federal Arbitration Act ("FAA"). See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 2). The FAA provides that an agreement to submit to arbitration is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA places arbitration agreements on "an equal footing with other contracts, and requires courts to

enforce them according to their terms." Rent-A-Ctr. West, Inc. v. Jackson, 561 U.S. 63, 67 (2010) (internal citations omitted). A party may petition a court to compel "arbitration [to] proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Generally, "a party cannot be required to submit to arbitration any dispute [that] he has not agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986). However, courts have developed a "liberal federal policy favoring arbitration." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). The district court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp., 207 F.3d at 1130.

Arbitration agreements are "a matter of contract" and "may be invalidated by 'generally applicable contract defenses, such as fraud, duress and unconscionability.'" Rent-A-Ctr., 561 U.S. at 67–68. Parties may "agree to limit the issues subject to arbitration" and "to arbitrate according to specific rules." Concepcion, 563 U.S. at 344. In determining whether the arbitration clause encompasses the claims at issue, "all doubts are to be resolved in favor of arbitrability." See Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 81 (2000).

### 2. Analysis of Motion to Compel Arbitration

POL moves to compel arbitration of the claims in the adversary proceeding. See generally Mot. to Compel. Importantly, the Motion to Compel Arbitration is brought by POL only and not by Michael Ray, who does not appear to be a party to the loan documents.[3] The Court will grant POL's motion.

---

[3] The claims against Ray—there are several: all but the two contract claims are brought against "All Defendants," see Ray Decl. Ex. D ¶¶ 59–79; 85–149—thus remain in this Court regardless of the Court's ruling on the arbitration motion. See AT&T Techs., Inc., 475 U.S. at 648 ("a party

8

### a. Enforceable Arbitration Agreements

POL asserts that it entered into valid written agreements to arbitrate with Envisage and the Rowsons, and that the claims in the adversary proceeding fall within the scope of the arbitration clauses. See Mot. to Compel at 5–7; see also Chiron Corp., 207 F.3d at 1130 (district court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."). Both assertions are correct.

Whether the parties in the present case entered into a valid and enforceable arbitration agreement is determined by California contract law. See Circuit City Stores, Inc. v. Najd, 294 F.3d 1104, 1108 (9th Cir. 2002). In California, a valid contract exists if (1) the parties are "capable of contracting"; (2) they manifested "[t]heir consent" to be bound; (3) there was a "lawful object"; and (4) there was "sufficient cause or consideration." Cal. Civ. Code § 1550; United States ex. rel. Oliver v. The Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999). The Court concludes that POL, Envisage, and the Rowsons are capable of contracting, that they consented to the three loan documents that contain the arbitration clauses, that they had the lawful object of establishing a loan, and that there was sufficient consideration. See Ray Decl. Exs. A ¶ 29, B ¶ 52.2, C ¶ 25.

The claims in the adversary proceeding "arise[] from Defendants' breaches of the implied covenants and duties of good faith and fair dealing and for other self-dealing, tortious conduct, including intentional misrepresentation, that constitute de facto commercial predatory lending." See Ray Decl. Ex. D at 2 (adversary proceeding complaint). The complaint alleges that POL breached the loan documents and committed a variety of tortious acts (and a RICO violation) in preventing Envisage and the Rowsons from receiving the benefit of their bargain. See, e.g., id. ¶ 101(d) ("Plaintiffs reasonably but sadly relied on the representations of POL's representatives at and during the origination of the . . . Loans . . . at all times believing that the POL workout policies . . .

---

cannot be required to submit to arbitration any dispute [that] he has not agreed so to submit.").

would be followed by POL, which in fact POL neither followed nor intended to follow but instead acted as an archetypal Dickensian rapacious creditor."); id. ¶ 116 ("When Defendants engaged in the above-described conduct, particularly in their repeated indifference and/or rejection of Mr. Rowson's requests and inquiries into Defendants' refusal to honor their obligations to fund the Alta and Envisage Projects . . . Defendants did so deliberately and intentionally in order to cause Mr. and Mrs. Rowson and their family severe emotional distress."). Given the sweeping language in the arbitration agreements, see Ray Decl. Ex. A ¶ 29 ("Any dispute involving the enforcement or interpretation of this Note . . . "); id. Ex. B ¶ 52.2 ("any and all disputes, controversies or claims arising out of or relating to this Deed of Trust and other loan documents or transactions contemplated thereby, including, without limitation, the making, performance, or interpretation of this Deed of Trust or other loan documents . . ."); id. Ex. C ¶ 25 ("Any dispute involving the enforcement or interpretation of this Agreement . . ."), such claims fall within their scope.

Envisage and the Rowsons, who bear "the burden of proving that the claims at issue are unsuitable for arbitration," see Green Tree Fin. Corp.-Alabama, 531 U.S. at 81, do not dispute, or address, any of this, see generally Opp'n to Mot. to Compel (dkt. 8). They do not dispute that the FAA applies. See id. They do not raise any of the defenses the Court typically sees in arbitration motions, such as assertions of procedural or substantive unconscionability. Instead, they make two arguments: first, that the adversary proceeding is a core proceeding, and second, that the disputes between the parties should be centralized in bankruptcy court. See id. at 3–8. Neither has merit.

### b. Core vs. Non-Core Claims

Envisage and the Rowsons argue that the adversary proceeding "is a core proceeding," but do not explain how the distinction between core and non-core impacts the Court's arbitration decision. See id. at 3–4. A review of the relevant case law yields an explanation: bankruptcy courts can sometimes deny a motion to compel arbitration when

10

the claim at issue is core, and rarely if ever do so when it is non-core.

The Ninth Circuit explained in In re Thorpe Insulation Co., that, notwithstanding the FAA's liberal policy favoring arbitration, "'the Arbitration Act's mandate may be overridden by a contrary congressional command.'" 671 F.3d 1011, 1020 (9th Cir. 2012) (quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987)). If Congress intended to limit the waiver of a judicial forum, it would evidence such intent in "the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purposes." Id. There is no such intent evident in the Bankruptcy Code's text or legislative history. Id. Accordingly, courts look to "whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code." Id. A threshold matter is whether the proceedings are core or non-core. Id. "In non-core proceedings, the bankruptcy court generally does not have discretion to deny enforcement of a valid prepetition arbitration agreement." Id. at 1021. This is because "non-core proceedings 'are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration.'" Id. (quoting In re U.S. Lines, 197 F.3d 631, 640 (2d Cir. 1999)); cf. Security Farms, 124 F.3d at 1008 ("[a]ctions that do not depend on the bankruptcy courts for their existence and that could proceed in another court are considered 'non-core.'").[4]

As discussed above, the adversary proceeding at issue here is a non-core proceeding.[5]

---

[4] The core/non-core distinction is "not alone dispositive" because "even in a core proceeding . . . a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code." See In re Eber, 687 F.3d 1123 (9th Cir. 2012) (quoting In re Thorpe Insulation Co., 671 F.3d at 1021).

[5] Envisage and the Rowsons argue that "Whether the entire contact creating the debt—and the related guarantee [sic]—was induced by fraud is a core issue that lies with the Bankruptcy Court for determination." Opp'n to Mot. to Compel at 7. They cite to no authority for this point, see id., and it appears that just the opposite is true, see Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445–46 (2006) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

11

### c. Centralization of Disputes in Bankruptcy Court

Finally, Envisage and the Rowsons argue that the disputes between the parties should be centralized in bankruptcy court—an argument that reads too much into In re Thorpe Insulation Co. See Opp'n to Mot. to Compel at 5–8. That case involved a creditor's claim to "disputed or affected assets in [a] § 524(g) trust," the purpose of which "is to consolidate a debtor's asbestos-related assets and liabilities into a single trust." See In re Thorpe Insulation Co., 671 F.3d at 1021–22. The Ninth Circuit held that "[b]ecause Congress intended that the bankruptcy court oversee all aspects of a § 524(g) reorganization, only the bankruptcy court should decide whether the debtor's conduct in the bankruptcy gives rise to a claim for breach of contract." Id. at 1022. The court went on to opine that, even apart from section 524(g), the purpose of the Bankruptcy Code is to centralize disputes about a debtor's legal obligations, and that "[t]he general need in any bankruptcy proceeding for centralization is heightened in a § 524(g) proceeding involving multiple insurers and numerous asbestos claimants." Id. at 1023.

It is indisputable that a goal of the Bankruptcy Code is to centralize disputes, but Envisage and the Rowsons would treat that goal as an exception that swallows the rule. In every case, litigation would be simpler and the bankruptcy court could maintain greater control if it denied a motion to compel arbitration and kept all disputes to itself. But the goal of centralizing disputes does not alone override the FAA, as In Re Thorpe Insulation Co. recognizes. See id. at 1021 (recognizing that in non-core proceedings, bankruptcy court usually cannot deny enforcement of a "valid prepetition arbitration agreement"). The Ninth Circuit in In re Thorpe Insulation Co. even noted that if the creditor in that case "had presented a standalone claim . . . limited and isolated to prepetition matters independent of the bankruptcy," that claim "likely should have been arbitrated." Id. at 1023 n.10. At issue here are just such pre-petition claims.

That the claims at issue here existed pre-petition, and continue to exist independent of Envisage's bankruptcy, is also why In re Eber is distinguishable. Envisage and the Rowsons cite to In re Eber as an example of the Ninth Circuit refusing to compel

12

arbitration of a creditor's claims because doing so would "conflict with the underlying purposes of the Bankruptcy Code," and specifically centralization, Opp'n to Mot. to Compel at 8 (citing In re Eber, 687 F.3d at 1129–31). In re Eber, however, involved an adversary action that "in actuality [sought] to arbitrate dischargeability under § 523(a)(2), (4) and (6), a core bankruptcy issue." Id. at 1130. It is not an example of a court refusing to compel arbitration of non-core claims in the name of centralization.

Relatedly, Envisage and the Rowsons cite to both Moses v. CashCall, Inc., 781 F.3d 63 (4th Cir. 2015) and In re Gandy, 299 F.3d 489 (5th Cir. 2002), for the general propositions that the Bankruptcy Code is concerned with efficiency, and that sending claims to arbitration can sometimes create a conflict with the Bankruptcy Code. See Opp'n to Mot. to Compel at 6–7. But Moses held that, where there were core and non-core claims, sending the core claim "to arbitration would pose an inherent conflict with the Bankruptcy Code." 781 F.3d at 66, 72. And In re Gandy held that, where there are both core and non-core claims and "the bankruptcy causes of action predominate," sending some claims to arbitration and keeping some claims in bankruptcy court would be "wasteful and inefficient." 299 F.3d at 497–99. Neither addressed the circumstances here, where the adversary proceeding involves only non-core claims. While efficiency might well be a "legitimate consideration[]" in determining whether arbitration would conflict with the Bankruptcy Code, see In re Nat'l Gypsum Co., 118 F.3d 1056, 1070 n.21 (5th Cir. 1997), there is no evidence that arbitration of the non-core claims at issue here would be inefficient.

Envisage and the Rowsons cite to more out-of-circuit authority in urging that "the additional litigation costs to litigate claims before two tribunals will harm [Envisage's] creditors by reducing the income" available to pay them. Opp'n to Mot. to Compel at 7. But they cite no Ninth Circuit case expressing this concern, and no evidence that litigation before an arbitrator would be any more costly than litigation before this Court.[6] Moreover,

---

[6] After all, given the Court's withdrawal of the reference, the options are this Court or an arbitrator, not bankruptcy court or an arbitrator.

13

their concern rings hollow, as Envisage and the Rowsons chose to file their own adversary action rather than cross-claims in either the state court action or, once Envisage filed for Chapter 11, the other adversary action (Case No. 17-3030-HLB), which Judge Blumenstiel has remanded to state court. See generally Order Granting Motion to Remand in Patch of Land Lending, LLC v. Rowson et al., Case No. 17-3030-HLB (Bankr. N.D. Cal. 2017). There will be multiple tribunals either way.

Although centralization of disputes is a recognized purpose of the Bankruptcy Code, it does not alone justify overriding the FAA, or the parties' contractual agreement to arbitrate their pre-petition, non-core claims. The Court therefore enforces the arbitration agreements as to the claims against POL.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to withdraw the reference and GRANTS the motion to compel arbitration of the claims against POL.

**IT IS SO ORDERED.**

Dated: October 11, 2017

CHARLES R. BREYER
United States District Judge

14